UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FIFTH THIRD BANK, NATIONAL ASSOCIATION,

Plaintiff, Case No. 2:24-cv-151

v. Hon. Hala Y. Jarbou

BESSE FOREST PRODUCTS, INC., et al.,

Defendants.
_________________________________/

**OPINION**

Plaintiff Fifth Third Bank, N.A., brought this action to enforce loans issued to Defendants Besse Forest Products, Inc., BFP Management, Inc., Wisconsin Veneer and Plywood, Inc., Northern Michigan Veneers, Inc., and Besse Wood Products, Inc. (collectively, "Besse"). Defendants are related entities involved in manufacturing lumber and wood products in Michigan and Wisconsin. With Defendants' consent, this Court appointed a receiver to manage and preserve Defendants' assets, which are not sufficient to satisfy Defendants' debts. Before the Court is a motion by Michael R. Prokop d/b/a Mike Prokop Logging, Paul Millan, Frank's Trucking of Peshtigo, LLC d/b/a Frank's Logging, Wild Rivers Forestry, Inc., Adam Desterheft, Ted Frank, LLC, A-C Timber Services, LLC, Suzan Logging, LLC, and Ugly Stick Logging & AG, LLC, (collectively, "Claimants") to enforce log liens against Besse. For the reasons herein, the Court will grant the motion in part and deny it in part.

**I. BACKGROUND**

In November 2024, after Claimants filed their lien petitions in Wisconsin state court, the Court granted Claimants permission to file foreclosure actions against Defendants, Fifth Third

Bank, Receiver, and other entities in Wisconsin state court so that the Claimants could toll the statute of limitations for foreclosure actions on the lien petitions. Claimants subsequently filed a motion in this Court for permission to adjudicate the validity of log liens they hold on some of the assets in receivership in Wisconsin state court. In January 2026, the Court denied Claimants' motion because they failed to show how the merits or equities of their claims warranted satellite litigation in state court. Now before the Court is the Claimants' motion for this Court to enforce the log liens (ECF No. 66), along with three affidavits to support their claims (ECF Nos. 67-69). Timothy Turek, in his capacity as Receiver, filed a response in opposition to the motion (ECF No. 71), and Fifth Third filed a response concurring with Receiver (ECF No. 72).

**II. STANDARD**

"To the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard, but the district court exercises significant control over the time and manner of such proceedings." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006). "In addressing claims on the receivership estate brought before it, the district court may consider both the merits of the individual claim and the equities attendant to the situation." *Id.* "The district court may require all such claims to be brought before the receivership court for disposition pursuant to summary process consistent with the equity purpose of the court." *Id.*

Some courts facilitating receiverships have relied on Rule 56 of the Federal Rules of Civil Procedure to resolve claims against the receivership estate. *See, e.g.*, *Yeo & Yeo, PC v. HP/Mgmt. Grp., Inc.*, No. 2:03-CV-40340, 2009 WL 1099261, at *2–3 (E.D. Mich. Apr. 23, 2009); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant can

support its position by "citing to particular parts of materials in the record, including . . . affidavits[,] declarations[,]" or other materials. Fed. R. Civ. P. 56(c)(1)(A).

## III. ANALYSIS

### A. Admissions

At the outset, Claimants argue that the Court must accept all the averments in the lien petitions because Defendants did not respond to them within the 20 days required to do so under state law. However, this argument ignores the fact that this Court's order appointing the receiver enjoined Claimants and others from "[c]ommencing, prosecuting, continuing or enforcing any suit or proceeding" against or affecting Defendants or their assets without first obtaining the Court's leave. (9/6/2024 Order ¶ 22a, ECF No. 7.) That order effectively stayed the proceedings on the petitions. The Court subsequently granted Claimants leave to file foreclosure actions on their petitions for the purpose of tolling the statute of limitations. *See* Wis. Stat. § 779.20(1) (requiring foreclosure action to be filed within 4 months after filing the petition). But the Court did not give Claimants leave to proceed in their actions until the Court ordered that their claims be adjudicated in this Court. (*See* 1/21/2026 Order, ECF No. 57.) Thus, Defendants were not required to respond to the petition in state court and did not admit the facts asserted in the petitions due to their lack of response.

### B. Continuous Services

Claimants seek recovery of the total value of all their deliveries during the respective time periods in which they delivered logs to Besse in the spring and summer of 2024. In order to enforce a log lien, a party must file a petition asserting the lien within three months "after the last day of

performing continuous services." Wis. Stat. § 779.19.[1] Services covered by the log lien statute include

> cutting, hauling, running, felling, piling, driving, rafting, booming, cribbing, towing, sawing, peeling, kiln drying or manufacturing logs, timber, stave bolts, heading staves, pulp wood, cordwood, firewood, railroad ties, piling, telegraph poles, telephone poles, fence posts, paving timber, tan or other barks or in preparing wood for or manufacturing charcoal.

*Id.* § 779.18(1).

Claimants argue that they performed continuous services of harvesting logs and then delivering them to Besse each time a truckload became available. Each claimant filed a sworn petition in state court. Generally, these petitions assert that Claimants performed services on logs delivered to Besse between two dates, the second of which was the last day of "continuously performing" those services. (*See* Pet. by Frank's Trucking of Peshtigo, LLC ¶¶ 4, 10, ECF No. 66-2; Pet. by Adam Desterheft ¶¶ 4, 10, ECF No. 66-3; Pet. by Michael R. Prokop ¶¶ 4, 9, ECF No. 66-4; Pet. by Paul Millan ¶¶ 4, 10, ECF No. 66-5; Pet. by Wild Rivers Forestry, Inc. ¶¶ 4, 11, ECF No. 66-7; Pet. by Ugly Stick Logging & AG, LLC ¶¶ 4, 11, ECF No. 66-8; *cf.* Pet. by A-C Timber Services, LLC ¶¶ 4, 11, ECF No. 66-9 (asserting that claimant worked "up until July 2, 2024," and that this was the last day of performing continuous services); Pet. by Suzan Logging, LLC ¶¶ 4, 10, ECF No. 66-6 (asserting that claimant worked "up until June 13, 2024," and that this was the last day of "continuously performing" services).) The petitions are accompanied by records showing the scaling and delivery of logs to Besse on particular dates in the spring and summer of 2024.

---

[1] Although the log lien statute has changed over time, it has consistently required that at least some claims asserting a log lien be filed within a certain time period after the completion of "continuous" services. *See, e.g.*, Wis Stat 289.19 (1941) (requiring petition to be filed within "thirty days after the last day of performing continuous services"); Act of Apr. 17, 1889, ch. 413, 1889 Wis. Laws 577 (requiring claim to be filed within 30 days after completion of services, if the services were "continuous" from before the first day of November to past the first day of the following May).

Three individuals—Allen Suzan of Suzan Logging, LLC, Michael Prokop of Michael Prokop Logging, and Nathan Overdahl of Ugly Stick Logging & AG, LLC—have also provided declarations describing their practices and relationship with Besse during the relevant time period. For instance, Suzan avers the following:

> Besse sets the terms for my sale of logs/timber to Bess by issuing open market "Log Price Lists".
>
> The Log Price List issued by Besse sets forth the price that Besse will pay for each log species, as graded in a price listed per one thousand (1,000) board feet.
>
> Each time I would make a delivery of logs/timber to Besse, Besse's log buyer "scaled" and graded each log. The sale and the grade assigned to each log upon delivery and inspection would dictate the amount I would get paid for the delivery, per the set pricing set forth on the Log Price List.
>
> Besse did not issue or require specific loggers to enter into written contracts with Besse. Rather, Besse would issue the Log Price List, and loggers such as myself could then calculate the anticipated prices that we would obtain in exchange for delivering certain species, quantities, and grades of timber products to Besse.
>
> In my experience, the Besse Log Price List would be valid up to approximately six (6) months but can change at any time, without or without advance notice.
>
> Absent significant fluctuation in the Log Price Lists from year to year, there was a measure of "loyalty" or value for the logger to continuously deliver logs to Besse. My understanding based on my many years of logging to Besse is that Besse relied on the flow of logs to supply its requirements.
>
> I was not required to meet set delivery times or quantities to Besse. Rather, I was free as the logger to continuously make deliveries to Besse as I continued to harvest additional timber during the same pricing period.
>
> For the time period between May-June 2024, we engaged in our customary production process—cutting, loading and, as soon as a truckload was accumulated, delivering to the Buyer.
>
> For the time period between May 2024 and June 13, 2024, I was working continuously to harvest and deliver logs/timber products to Besse.
>
> I delivered logs continuously until Besse indicated that it did not want any more, effectively suspending its open market Log Price List.

> I personally talked with the other Log Lien Claimants, and my experience above is consistent with the other Log Lien Claimants' business relationships and general practice of delivering log/timber to Besse.

(Suzan Decl. ¶¶ 5–15, ECF No. 67.) The other declarations contain identical wording, except that the time periods for the continuous services those declarants provided are slightly different. (*See* Prokop Decl. ¶¶ 13–14, ECF No. 68 (describing the time period for his continuous services as "between March 2024 and May 30, 2024"); Overdahl Decl. ¶¶ 14–15, ECF No. 69 (describing the time period for his continuous services as "between April 2024 and May 10, 2024").)

Receiver argues that Claimants can only enforce a lien on logs that were delivered within the three-month window before the respective petitions, and on deliveries by a Claimant on successive days leading up to the start of that window, but not on deliveries occurring before those times because the earlier deliveries were not part of continuous services leading up to the three-month window for claiming a lien.

The centerpiece of the Receiver's argument is that there was no overarching agreement between Claimants and Besse for the sale of logs. Daniel LaMarche, the former Chief Financial Officer of Besse's umbrella company, states that loggers "did not have a contract or commitment of any kind from Defendants to purchase the logs[,] and there were no purchase orders issued to the loggers by Defendants." (LaMarche Decl. ¶ 6, ECF No. 71-1.) Loggers were "under no obligation to deliver goods for sale to Defendants[,] and Defendants were under no obligation to buy from the loggers." (*Id.* ¶ 7.)

Claimants respond that the log lien statute does not require a contract in order for services to be continuous. They are correct. Though Wisconsin courts have considered the presence of a contract *relevant* to determine whether services are continuous, they have not expressly required it. For instance, in *Fish Creek Boom & Log-Driving Co. v. Weed*, the Wisconsin Supreme Court held that the plaintiff could not enforce a lien on logs that were delivered three months after

previous logging services were completed and after "both parties treated the contract as having been fully performed." 50 N.W. 585, 586 (Wis. 1891). The Court noted the "interruption in the services or in the delivery of logs of more than three months, when no logs were rafted and boomed." *Id.* The court concluded that it would be "unreasonable and unjust" to permit the plaintiff to enforce its lien "after having rested so long a time after the completion of the contract." *Id.*

In dicta, the court contrasted the case to one where a party performed all its services under a contract; such services would be "continuous" "within the meaning of the law," even "though there may be a cessation of a few days in the work." *Id.* In other words, a contract could render non-continuous work continuous "within the meaning of the law." But neither that statement nor the holding in *Fish Creek* entail that for work to be "continuous," there must be a single contract covering all the services. In other words, the court in *Fish Creek* gave two reasons for denying recovery: (1) the services for those logs were not continuous in fact with the previous services provided and (2) there was no contract that might have rendered the services on the additional logs continuous under the law. That logic does not necessarily bar recovery here, where Claimants argue that their services were continuous in fact.

The Wisconsin Supreme Court also discussed the meaning of continuous in *Kendall v. Hynes Lumber Co.*, 71 N.W. 1039 (1897). There, the court stressed that "continuous" means that services "continued without material interruption," and that "abandonment of the work for any period . . . breaks the necessary continuity required." *Id.* at 1041. The court reasoned that continuous work during the logging season "reasonably furnishes notice of the existence of the lien." *Id.* In that case, however, the work was not continuous because the laborer spent part of the period "driving piles" and "building docks and tramways for permanent use in connection with [a]

sawmill." *Id.* at 1040. That work did not fall within the definition of services covered by the statute, so it broke the chain of continuity. *Id.*

Finally, in *Collins v. Cowan*, the Wisconsin Supreme Court held that a single lien existed for the entire amount of a laborer's services, even though the laborer's continuous period of work was dedicated to two different employers for two different time periods. 9 N.W. 787, 788 (Wis 1881). The court reasoned that "it is the performance of the labor or services, and not the contract of employment or the relation that the employer bears to the logs, or the ownership thereof, that creates the lien." *Id.* Similarly, Claimants' continuous services can create a lien; a single contract is not necessary.

In short, although there was no single contract covering the entire period during which any Claimant provided services, the statute only requires that Claimants file their petition within a certain time period after the completion of continuous services. If they meet that requirement, they are entitled to a lien on the logs for which those continuous services were provided. Even Receiver appears to concede this point by allowing claims outside the three-month window where Claimants delivered logs on successive dates. (Receiver's Resp. Br. 10 ("[I]f a claimant worked several days in a row leading up to the cutoff date, those days would be included in the lien as well.").) In effect, Receiver is treating deliveries on successive dates as evidence of continuous delivery services. However, the statute covers more than just delivery services. It also covers services necessary to procure the logs. *See* Wis. Stat. § 779.18(1).

That said, only three Claimants have provided evidence necessary to satisfy the continuous-services requirement for all of their deliveries. In their declarations, Suzan, Prokop, and Overdahl expressly aver that their services in procuring logs were continuous throughout the relevant time periods. They worked continuously harvesting logs for Besse and delivered them as soon as a

truckload accumulated. Receiver offers no evidence to the contrary. But the only evidence provided by the *other* Claimants (namely, their sworn petitions) merely identifies the dates of their last deliveries as their last day of continuous services. That evidence does not demonstrate that their services were continuous throughout the time periods in which they delivered logs to Besse. Also, it is undisputed that most of their deliveries were not on successive dates. Consequently, there is no basis in the record to consider the earlier deliveries to be continuous with the later ones. These other Claimants cannot rely on the declarations of Suzan, Prokop, and Overdahl as evidence of their own conduct. As Receiver notes, though the declarants aver that they spoke to the other Claimants and confirmed that the other Claimants' experiences were "consistent" with their own, those assertions are hearsay and not based on personal knowledge, so the Court will not consider them.

Claimants apparently argue that any gaps in time between deliveries are immaterial because they were not as long as the three-month gap in *Fish Creek*. In that case, however, the court did not purport to hold that three months is the minimum length of time that would render services non-continuous. To the contrary, the court implied that, in the absence of a contract, even a "cessation of a few days" could render the work non-continuous. *Fish Creek*, 50 N.W. at 586. Similarly, in *Kendall*, the court indicated that "abandonment of the work for any period" breaks the necessary continuity. 71 N.W. at 1041. Together, these statements suggest that even a brief interruption of a few days (or less) could break the continuity, absent some other facts (like the existence of a contract) tying the work together into a continuous whole. Claimants have not cited any authority suggesting otherwise.

Accordingly, the Court finds that Suzan Logging, LLC, Mike Prokop Logging, and Ugly Stick Logging & AG, LLC, have satisfied the continuity requirement for all their deliveries. The

other Claimants have not. The Court will only allow the latter to recover for deliveries made within the three-month window of time before filing their respective petitions and for deliveries on successive days leading into that window.

**C. Specific Claimants**

**1. A-C Timber Services, LLC**

Receiver acknowledges that A-C Timber is entitled to a lien for **$2,525.75**, which is the value of the deliveries it made on July 2, 2024, the only deliveries within the three-month window before it filed its petition on October 2, 2024. (Receiver's Resp. Br. 10, ECF No. 71.) The Court agrees. Its next earliest delivery was on June 27, 2024. A-C Timber has not established that this or any other deliveries were part of continuous services leading up to July 2, 2024.

**2. Adam Desterheft**

Receiver acknowledges that Desterheft is entitled to a lien for **$9,409.60**, which is the value of the last two deliveries he made on May 22, 2024, within the three-month window before he filed his petition on August 21, 2024. (Receiver's Resp. Br. 11.) The Court agrees. He has not established that his earlier deliveries were part of continuous services.

**3. Paul Millan**

Receiver acknowledges that Millan is entitled to a lien for **$1,282.50**, which is the value of his last two deliveries on June 10 and 11, 2024, successive days leading up to the three-month window before he filed his petition on September 11, 2024. (*Id.* at 12.) The Court agrees. Millan has not established that his earlier deliveries were part of continuous services.

**4. Frank's Trucking of Peshtigo, LLC d/b/a Frank's Logging**

Receiver acknowledges that Frank's Logging is entitled to a lien for **$1,250.37**, which is the value of its last two deliveries within the three-month window before it filed its petition on

August 14, 2024. (*Id.* at 13.) The Court agrees. Frank's Logging has not established that its earlier deliveries were part of continuous services.

**5. Michael Prokop d/b/a Mike Prokop Logging**

Receiver contends that Mike Prokop Logging is only entitled to $1,163.00, the value of his last delivery within the three-month window before he filed his petition on August 28, 2024. (*Id.*) The Court disagrees. Prokop's declaration establishes that his services throughout the relevant time period were continuous. Accordingly, he is entitled to a lien for the amount claimed in his petition that is supported by the record, including the documents attached to his declaration.

Receiver claims that Mike Prokop seeks a lien for $13,150.00, but Receiver does not explain why his number is different from the much higher amount sought in Prokop's petition ($23,930.00), and the Court cannot match Receiver's calculations to the receipts provided. Accordingly, the Court will direct the parties to provide supplemental briefing on this issue.

**6. Suzan Logging, LLC**

Receiver contends that Suzan Logging, LLC, is only entitled to $3,829.25, the value of its last delivery within the three-month window before it filed its petition on September 13, 2024. The Court disagrees. Suzan's declaration establishes that the company's services were continuous throughout the time period. Accordingly, Suzan Logging, LLC, is entitled to the full amount claimed and supported by documentation. It appears, however, that the parties disagree on the proper amount. Suzan Logging seeks $48,050.98 in her petition (Suzan Logging Pet. ¶ 8, ECF No. 66-6), but Receiver claims she seeks a total lien for $46,881.83 (Receiver's Resp. Br. 13). The Court cannot ascertain the reason for this discrepancy and will require the parties to provide supplemental briefing on this issue.

**7. Ted Frank, LLC**

Receiver asserts that Ted Frank, LLC's petition is untimely because it filed its lien on August 14, 2024, three months and a day after the company's last delivery to Defendants. In their motion, however, Claimants attached a letter from Ted Frank's counsel explaining that the lien was filed on time a day earlier but that it was inadvertently rejected by court staff, who then told counsel to refile. (Letter, ECF No. 66-1, PageID.1472.) Counsel attached to the letter a screenshot indicating that the lien was filed on the date that counsel claims it was. (*Id.*, PageID.1473.) Accordingly, the petition is timely.

However, the only delivery within the three-month window was on May 13, 2024. Claimant has not established that its earlier deliveries were part of continuous services. Thus, Ted Frank, LLC is entitled to a lien for **$1,766.00**, the value of its last delivery. (*See* 5/13/2024 Receipt, ECF No. 66-1, PageID.1469.)

**8. Wild Rivers Forestry, Inc.**

Receiver asserts that Wild Rivers Forestry's petition was filed three months and four days after its last day of services, which Receiver claims was on June 14, 2024. Wild Rivers Forestry's sworn petition, which it filed on September 20, 2024, asserts that it performed services between "April 2024 and June 14, 2024," but that its last day of performing "continuous" services was June 20, 2024. (Wild Rivers Forestry Pet. ¶¶ 4, 11, ECF No. 66-7.) However, its records in support of the petition show that it invoiced its last delivery on June 14, 2024. (7/19/2024 Email, ECF No. 66-7, PageID.1729.) And its petition seeks recovery for invoices dated on or before June 14, 2024. (*See id.*, PageID.1728–29.) Thus, even if it performed services on June 20, 2024, it is not clear what amount it is claiming for those services. Nor has it established that the latter services are continuous with the services performed on and before June 14, 2024. Consequently, the Court agrees that this petition is untimely.

**9. Ugly Stick Logging & AG, LLC**

Receiver asserts that Ugly Stick Logging failed to provide any dates for its services, so it is impossible to know whether its petition filed on September 25, 2024, was timely. But Overdahl, who does business as Ugly Stick Logging, included the relevant dates in his declaration. (Overdahl Decl. ¶ 4.) However, the last date that he delivered logs to Besse was on May 10, 2024, more than three months before filing the company's lien petition. (*Id.*) Therefore, the petition is untimely.

## IV. CONCLUSION

For the reasons discussed, the Court will grant the motion to enforce in part and deny it in part. The Court will deny the motion as to the petitions by Wild Rivers Forestry and Ugly Stick Logging because those petitions are untimely. The Court will grant the motion in part as to A-C Timber Services, LLC, Desterheft, Millan, Frank's Trucking of Peshtigo, LLC, and Ted Frank, LLC for the amounts stated above. The Court will grant the motion as to Michael Prokop Logging and Suzan Logging, LLC, but will require the parties to provide further briefing regarding the proper value of the lien.

An order will enter that is consistent with this Opinion.

Dated: September 21, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE